UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MASI and GRACE MASI, as parents of the deceased Ryan Masi, <br><br>Plaintiff, <br><br>v. <br><br>JAMES HARRINGTON, <br><br>Defendant. | No. 23 CV 2132 <br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Christopher Masi and Grace Masi ("Plaintiffs") bring this action against Defendant James Harrington ("Harrington") seeking damages under the Illinois Drug Dealer Liability Act (the "Act"). Plaintiffs allege that Harrington distributed fentanyl to their son Ryan Masi ("Masi"), which caused Masi's death. Harrington moves to dismiss, arguing Plaintiffs failed to allege that Masi was a "drug user" under the Act. For the reasons stated below, Harrington's motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual

1

allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

On September 18, 2021, Ryan Masi, Michael Beaudin, and James Harrington met for dinner in Chicago. R. 22 ¶ 13. The three men were in their mid-twenties and had been friends in high school. *Id.* ¶¶ 1, 10. After midnight, they arrived at Harrington's apartment, where Masi and Beaudin were "unwittingly exposed" to fentanyl powder. *Id.* ¶¶ 1, 13–14. Masi and Beaudin both died at the apartment on September 19 in the early morning. *Id.* ¶¶ 14–15. A post-mortem toxicology test indicated cause of death for both as acute opioid overdose. *Id.* ¶ 14.

Harrington called 911 from his apartment the afternoon of September 19. *Id.* ¶ 15. He told the 911 operator that he had consumed "coke", that he was unable to move, and that he had two friends who were passed out. *Id.* Chicago Police recovered from Harrington's apartment a small pink bag containing approximately 0.3 grams

2

of a white powder, which the Illinois State Police Forensic Services Crime lab later determined to be a mixture of fentanyl and para-fluorofentanyl (a synthetic opioid similar to fentanyl). *Id.* ¶ 16. It is currently unknown whether Harrington originally believed the powder to be cocaine or fentanyl. *Id.* ¶ 19.

Harrington had prior experience with illegal drugs, and the Amended Complaint cites three examples of Harrington's prior cocaine use, in June 2021, on September 3, 2021, and on September 17, 2021. *Id.* ¶ 17. In contrast, Plaintiffs allege that neither Masi nor Beaudin were "users of illegal drugs". *Id.* ¶¶ 12, 18. To support this allegation, Plaintiffs cite the toxicology test, which did not detect any illegal drugs in Masi and Beaudin's bodies outside of the fentanyl that caused their deaths. *Id.* Plaintiffs also claim to have had "numerous discussions" with Masi and Beaudin's close friends confirming that neither of them used illegal substances. *Id.* ¶ 12.

Plaintiffs' Amended Complaint, R. 22, alleges one count against Harrington under the Illinois Drug Dealer Act, which Harrington moves to dismiss, R. 23.

## Discussion

The sole issue before the Court is whether Plaintiffs sufficiently allege that Masi was a "drug user" under the Illinois Drug Dealer Liability Act.[1] In relevant part, the Act allows "parent[s]" of an "individual drug user" to recover damages against a defendant who "knowingly distributed . . . an illegal drug that was actually used by the individual drug user." 740 ILCS 57/25(a)(1), (b)(1). The Act defines an "individual

---

[1] Harrington's motion to dismiss does not challenge the sufficiency of allegations regarding *knowing distribution* so that Court does not address that element.

3

drug user" as an "individual whose illegal drug use is the basis of an action brought under this Act." 740 ILCS 57/15.

The Act requires that an individual drug user "actually use[]" an illegal drug. Words in statutes must be given plain meaning, and courts frequently look to dictionaries to determine the plain meaning of words. *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). Black's Law Dictionary defines the verb "to use" as "to employ for the accomplishment of a purpose" or "to avail oneself of". USE, Black's Law Dictionary (11th ed. 2019). The verb "to use" thus suggests at least some degree of activity. For Masi to have "used" an illegal drug or to be a "drug user" under the Act, he must have necessarily taken actions to avail himself of the drug.

As alleged, the police identified a bag of fentanyl powder in Harrington's apartment, where Masi died of opioid overdose. Drawing all reasonable inferences in favor of the non-moving party, it is reasonable to infer that first, the opioid identified in Masi's body by the toxicology test was that same powder from the bag; and second, for the powder to transfer from the bag to Masi's body, Masi took actions to avail himself of the powder. In other words, Masi "used" the powder.

Harrington raises two arguments that focus on specific language in the Amended Complaint. First, Plaintiffs never directly state that Masi *used* fentanyl. Instead, Plaintiffs allege that Masi was "unwittingly exposed." R. 22 ¶ 1. *See also id.* ¶¶ 3, 14 ("exposed"). Harrington argues that being "unwittingly exposed" does not rise to the level of "use" and thus Plaintiffs fail to state a claim. R. 23 at 5–6; R. 26. Yet, read in context, Plaintiffs specify that Masi was "unwittingly exposed *to*

4

*fentanyl.*" R. 22 ¶ 1 (emphasis added). To survive a motion to dismiss, Plaintiffs need only plausibly allege that Masi took action to avail himself of the powder, not that Masi was specifically aware the powder was fentanyl. Drawing all reasonable inferences in favor of the non-moving party, the Court finds this plausible.[2]

Second, Plaintiffs twice allege that Masi was not a "user[] of illegal drugs." *Id.* ¶¶ 12, 18. Harrington argues that per Plaintiffs' own allegations, Masi is therefore not a "drug user" under the Act. R. 23 ¶¶ 1, 5. Again, language must be read in context. *Matter of Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998). In paragraph 12 of the Amended Complaint, Plaintiffs refer to "numerous discussions" they had with Masi's close friends confirming Masi did not use illegal drugs. R. 22 ¶ 12. In paragraphs 12 and 18, Plaintiffs refer to the toxicology test, which did not detect any illegal drugs in Masi's body *other than* the fentanyl that caused his death. *Id.* ¶¶ 12, 18. Contextually, the allegation that Masi was not a "user[] of illegal drugs" refers to Masi's pattern of behavior *prior to* the night in question, not to whether Masi "actually used" an illegal drug on September 19.

## Conclusion

The Amended Complaint contains sufficient factual matter to state a claim that is plausible on its face. For the foregoing reasons, Defendant's motion to dismiss is denied.

---

[2] To the extent an accidental, environmental exposure to the fentanyl powder caused Masi's death rather than Masi taking action to avail himself of the powder, such an exposure would not meet the Act's requirement that Masi "actually used" the drug. Whether environmental exposure could lead to the toxicity levels present in the toxicology test will likely be the subject of discovery.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

DATED: November 6, 2023